THOMPSON v. JONES.

1. J. purchased of T. a note which he held, made under the statute
   of 1818, reserving interest at twenty per cent per month from the
   time when due till paid, and gave his notes for it, both believing
   the high rate recoverable.   The notes given by J. are not void for
   usury, though they embrace a part of the high rate in their conside-
   ration, and though the high rate was afterwards determined not to
   be recoverable.
2. Semble, that for so much of the high rate of interest included in
   them, there was no consideration, it being penalty.
3. To a note the defendant pleads usury, and produces his evidence.
   The plaintiff may demur to the evidence in law.

ROBERT THOMPSON commenced this and two other
similar actions of debt, in August 1826, in Lauderdale
Circuit Court, against Littleberry H. Jones, to recover on
three several promissory notes made by him, J. R. B. El-
dridge and T. Eldridge, to the plaintiff, on the 14th March
1822, each for $2100, with interest from the date at eight
per cent, payable in one, two, and three years respectively.
The proceedings, evidence, and judgements in each case
were precisely the same as in this.   The defendant plead-
ed the plea of usury, on which issue was joined.

At September term, 1827, the case came on for trial,
and was put to the jury.   On motion of the plaintiff, a
person was appointed by the Court to take down in writ-
ing the evidence offered; and the defendant's evidence-

was reduced to writing ; and when done, the plaintiff demurred to it as being insufficient to support the plea of usury, in which demurrer the defendant joined. A juror was withdrawn, the jury discharged, and the Court overruled the demurrer to the defendant's evidence, and gave judgement for the defendant.   The evidence is fully stated in the opinion of the Court.

The judgement given on the demurrer to the evidence in the Court below, is the error assigned by Thompson, in this Court.

M'KINLEY and HOPKINS, for the appellant.

KELLY and ORMOND, for the defendant.

JUDGE SAFFOLD delivered the opinion of a majority of the Court. *a*

THE defendant pleaded the plea of usury, therein detailing the facts on which he relied to sustain his defence, and introduced the testimony of witnesses, and also his own evidence, under the privilege of the statute concerning usury.   To this evidence the plaintiff demurred, and the judgement on the demurrer is assigned as error.

One branch of the defendant's argument is, that the plaintiff could not legally demur to the evidence, unless he had expressly admitted on the record, every fact which the defendant's testimony conduced to prove.   The right of the plaintiff, under circumstances like the present, to demur to the evidence, is believed to be well established by law, and the principle has long since been recognized by the decisions of this Court. *b* Moreover, it does not appear that the defendant objected, or requested to be excused from joining in the demurrer.   We hold, however, that the party demurring, concedes by implication, every fact in favor of his adversary which the jury could reasonably infer from the testimony.   Thus, regarding the evidence in this case, the facts are in substance as follows: 1st. Viewing the case as presented by the indifferent testimony only, it appears, "that the plaintiff held a bond on A. B. Dandridge, D. Wade and R. H. Dandridge, whereby, on the 8th day of January, 1819, they promised, on or before the first day of January next thereafter, to pay the plaintiff, or order, $4440, for value received, *with twenty per cent per month interest* on the above amount, *thereafter, until paid.*   Credits appeared

*a* These cases were argued at last Jan'y term, and continued till this term for further argument and re-argued at this term

*b* Ante p. 320.

on the note to the amount of $1800, expressed to be in part payment of the interest due thereon, dated subsequent to the maturity of the note.  There was also an endorsement on the bond, by which the defendant acknowledged that he had, on the 14th March, 1822, which is the date of the note here sued on, purchased of the plaintiff the said instrument, and had exonerated him from all responsibility respecting the payment of the same, or any part thereof.  This bond was the consideration of the note sued on, and of two others, all of the same amount, making together, the sum of $6300, payable in three instalments, with interest from the date, one of which had been given for each instalment.  Each of said three notes were also signed by two other persons, the Eldridges, as securities of the defendant, and by his procurement.  The defendant appears to have been influenced to enter into this contract from motives of friendship to the original debtors, and his apprehension of their great injury or ruin from the rapid increase of the debt, at the rate of interest stipulated, amounted to more than $10,000 per annum on the $4440; and at the time this defendant contracted, this rate of interest had been running more than two years.  The plaintiff, however, in conversation with the obligors, both before and after the maturity of their bond, said he would not exact the full rate of stipulated interest, that he would only require *five per cent per month*.  The plaintiff, on several occasions after his original debt became due, expressed a desire that a new bond should be given with additional security in lieu of the original one, securing the principal and the less rate of interest which he had agreed to take.  He sometimes intimated doubt as to the sufficiency of the obligors, at other times expressed concern lest the high rate of interest would ruin them.  On one occasion, shortly after the bond fell due, being applied to by Wade, one of the obligors, to change the contract, by permitting the original bond to be taken up and new ones executed, he refused, and gave as a reason that the law under which the contract was made, had been repealed; but he then renewed his promise verbally, to exact not more than five per cent per month interest.  But about two years afterwards, the plaintiff proposed to the same person a similar modification of the contract, if additional security could be given.  The defendant, before purchasing the

bond, expressed his apprehensions to one of the obligors, that the plaintiff might recover of them the stipulated rate of interest, and said he would endeavor to procure it on the best terms possible.   The negotiation ensued, the terms having been previously agreed on.   Wade was present when the contract was consummated.   The plaintiff transferred the bond to the defendant as stated, who then executed the notes to secure the amount which he had agreed to pay the plaintiff for it.   Previous to the contract, it was distinctly understood between the defendant and original obligors, that they were not to pay him more than they engaged to give the plaintiff.   After the purchase of the bond, the defendant held it as his own property, and Wade, one of said obligors, secured to the defendant, by deed of trust, his portion of the sum which the defendant had bound himself to pay.   The other obligors refused to secure the defendant, on the ground that he had agreed to pay the plaintiff more. than he could have recovered of them.   The defendant then sued them on the bond, but dismissed his suit under the impression that he could not recover as much as he had agreed to pay the plaintiff.   It further appeared that R. H. Dandridge had paid the plaintiff what he conceived to be his proportion of the debt, before it was purchased by the defendant, and that he was ignorant of the intention of the latter to make the contract, until after it was done.

These facts appear from the testimony of indifferent witnesses.   The defendant's own evidence does not vary the case in any very essential degree, except that it explains the intention of the parties in making the contract.   He states in addition, that two or three months before he contracted, the plaintiff proposed to sell the bond to him. He at that time declined purchasing it.   The plaintiff requested him to speak to Wade, on the necessity of his securing the debt, saying, he would make some abatement of the interest.   The defendant asked him if the rate of interest as stipulated was recoverable.   The plaintiff replied, he believed it was, and requested him to take the bond and consult a lawyer; and again urged him to purchase it,   saying, the. rate of interest was ruinous to the obligors.   The defendant took the bond, consulted an attorney, and was advised that the interest was recoverable.   The defendant having returned the bond, advised Wade. to give new security and take it up.   He being

unable to do so, the defendant said he would try to get the bond on his own responsibility, but would require nothing more from the obligors than it should cost him. A*ter which, the defendant applied to the plaintiff, and purchased the bond at $150 or $200 less than he at first asked for it. The defendant informed the plaintiff at the. same time, one of the obligors being present, that he did not intend to require of the obligors more than he paid for the bond. The plaintiff said to the defendant, he might profit by the contract, as the obligors were liable for the whole amount. The defendant informed the plaintiff in what character he acted; that he contracted to benefit the obligors, and that he thought they were worth more than he had contracted to give for the bond."

This is all the evidence deemed material in the case; and the question is, does it sustain the plea of usury? and if not, what is its legal effect?

Inasmuch as the original contract was executed in *January*, 1819, when there was no prohibition against usury, the bond, which was the consideration of the note sued on, was free from all objections on the ground of usury. The statute relied on is, the "act to regulate the rate of interest," passed in December, 1819. The language is such as has been usually employed to prohibit usurious contracts. To constitute usury there must be a loan or forbearance contracted for money or some other article, *at a rate of interest exceeding eight per cent per annum.* I hold the rule to be universal, and one that will bear the strictest scrutiny, that to constitute usury in the execution of a security, *there must be an intention in some of the contracting parties, to give or promise, receive or secure more than the established rate of interest on the money or other article lent or forborne.* But it is equally true, if a security has been created for the purpose of raising money at an usurious rate, having never been negotiated in the course of business, and it be discounted at such a rate of premium by one ignorant of the circumstances, the instrument is nevertheless void, as against the original debtor; yet in such case, an innocent endorsee may recover of his endorser, the amount of money advanced thereon.

In support of the proposition, that an unlawful rate of premium must be contemplated by the original parties, to avoid the security, the argument may be used which all

concede, that a note drawn for a legitimate purpose, and regularly negotiated in the course of business, may afterwards be purchased at a price much below the amount thereby secured, without violating the statute; and that the consideration may be paid presently, or at a future day.  It is also clear, that notes of the same description may be exchanged with impunity, without regard to the equality of the sums.  One may purchase an article of property on a credit, even at an extravagant price, and may immediately sell the same in pursuance of his own previous design, for the purpose of raising a much less sum of money, and commit no violation of the statute, unless the vendor of the article intended indirectly to effect a loan.  The intention of the parties has been recognized in a thousand cases, by the highest tribunals, as the criterion for deciding questions of usury; and if a doubt could exist, whether it is not inseparably connected with the nature of the offence or controversy, it is put to rest by a proviso in the statute referred to, and which is relied on in support of this plea:  It is, that the act "shall not be so construed as to prohibit the sale of any bond, or bonds, which may have been fairly and *bona fide* given, *and not given for the purpose of evading the provisions of this act.*"

I conceive the true doctrine to be, that if a bond or note has been prepared for the purpose of procuring money at an usurious rate, no matter under what other specious pretext, what the position, or how many names appear upon it, and it be negotiated pursuant to the design, the security is void.  No cunning or artifice in the management, by the supposed debtors, nor feigned ignorance in the person discounting it, can vary the case, provided the facts can be discovered.  If a person to whom a note is offered for discount be, in fact, ignorant of the circumstances under which it was created, he must ascertain, at his peril, that it has acquired validity, by having been executed on a legal consideration; or if it prove otherwise, he can only expect indemnity from the person from whom he received it, or under like circumstances from a prior endorser.  If the parties to a contract intend indirectly to effect the object of usury, and believe they have used sufficient management to evade the statute, but have misconstrued the effect of their artifice, then there is consistency in applying the forfeiture, and the maxim *ig-*

*norantia juris non excusat*, to him who designed to profit by the illegal contract. But to this case I do not think either can have a just application.

It is most clear, that an unintentional mistake in computing the amount of a sum due, would not constitute usury. Then why should an honest misconstruction of a penal stipulation, for liquidated damages, stand on a different foot? Or, on what principle can a difference be maintained on the question of usury, whether this contract was made by this plaintiff, the original obligors, or any other person; or whether payment was made for the bond at the time of the purchase, or promised at a subsequent day? I conceive there can be none. Would any contend that one who has a doubtful claim to any article of property, depending alone on complicated questions of law, by selling in good faith a relinquishment of his claim to one equally cognizant of the facts, would thereby commit usury, provided it turn out that his title fails partially or entirely? If not, questions relating to penalties and stipulated damages must, as contended by the plaintiff's counsel, involve the same principle. Few questions in any country have presented greater difficulty, or more doubtful construction, than the nice discriminations by which they are distinguished. The true character of the stipulations of the bond for which this and the other notes were given, as shewn by previous adjudications, has admitted of the greatest variety of opinion among the most learned jurists of this State. Then, shall the plaintiff forfeit his true debt, because he, as well as the defendant, construed the contract differently from our subsequent decision? This latter contract was made in March, 1822, before the great penalty questions here had been seriously agitated. From the evidence we are bound to assume the facts, that the plaintiff confidently believed, when he entered into the original contract, that the stipulated premium was recoverable; and that both he and the defendant entertained the same opinion at the time of the execution of the note sued on.

It cannot be contended, that if this plaintiff, or any other person, had purchased the bond at the same price, and made immediate payment, usury would have been committed. The contrary principle has been fully recognized in the case of *Brahan against Reeves*, during the present term, and by many other decisions of this Court.

Nor would the case be different if the original obligors had paid off the bond at any time, with the same or a much larger sum. Then it follows irresistibly, from these uncontested principles, that this contract was not *usurious*, unless it could be collected from the nature of the transaction, that the parties *intended, as the price of the forbearance*, to secure more than the amount which they believed to be due on the old contract, and thereby evade the restraints against usury. The very reverse of which is abundantly shewn.

Both parties believing the larger sum recoverable, I think the conclusion is obvious, that the plaintiff was influenced in making the contract, by a doubt as to the ability of the obligors to pay more than the four or five per cent per month, or even so much. It may well be presumed also, that he apprehended some danger of a conveyance of their property, or other desperate means to defeat him entirely, if either of the exorbitant rates of interest continued to run; and it is rational to suppose, in addition, that under their threatened ruin he felt some *restraint of conscience.* For, though he at one time refused to renew the bond with the original parties, assigning as a reason that the law under which the contract was made had been repealed, subsequently he proposed to do the same thing, and had the advice of an attorney, through the defendant, that the whole was recoverable. The defendant also having this advice, was greatly apprehensive of ruin to his friends, the obligors, and anxious to relieve them from danger. He declared repeatedly, that he did not intend to profit by the contract; that the obligors should have the bond at the same price: and it is evident that he did not expect to loose materially, if at all, by it. He believed the obligors worth the sum he had contracted to pay, and required only that they should secure him. Other considerations, which I consider decisive on this question, are. that the defendant was not previously *a debtor so as to require forbearance.* He *received no money* at the time of the contract; nor is it probable he expected to receive any from the obligors, for any other purpose, or earlier, than to enable him to pay the plaintiff. Nor is it shewn *that he has yet received any money* under the contract. I think no case has or can be cited, similar to the present, which has been adjudged usurious. Hence I arrive at the conclusion, that the judgement below must be reversed.

But then another question arises of equal difficulty. The notes given by the defendant and his securities for the bond, included in the computation, not only the princal and the legal interest of eight per cent, as due on the latter, but also three or four thousand dollars of the penalty therein stipulated. The form of this bond, notwithstanding the contrary opinions, presents a strong case of penal stipulation. It was a contract to pay the plaintiff, on or before a day certain, "$4440, for value received, *with twenty per cent per month interest*, on the above amount, *thereafter until paid*." This was a rate of premium on the amount of the debt mentioned, exceeding $800 *per month*, or $10,000 *per annum*. This premium was not to attach, except in the event of a failure to make punctual payment. And I yet adhere firm and confidently to the opinion which has with difficulty obtained, that the exorbitant premium thus stipulated, can only be regarded as *penalty*, to ensure prompt payment, whatever may have been the real fact as to the intention of the parties in entering into it.

Previous to the usury act of 1819, if the parties consented to incorporate such premium into the body of the contract as part of the principal, and give it the same effect under the immunities of the statute of 1818, I think they could do so. Perhaps, since the prohibitory act of 1819, where they evidently intended it as a compromise or confirmation, they may have effected the object in relation to such contracts previously existing. But if premiums of this description be made the considerations of subsequent contracts, and the parties proceed under the conviction, as in this case, that they are legally due and recoverable, I hold the contract, *pro tanto*, void for want of consideration; that it is clearly *nudum pactum*. In the case of *Brahan against Reeves* referred to, we decided that money paid on such considerations by one not a party to the original contract, could be recovered back. The principles of relief are equally clear when payment has not actually been made, but promised; and I think the advantage is in favor of the latter. The doctrine of defence for want or failure of consideration is the same, whether entire or partial, provided, in the latter case, the consideration consists of distinct items, or parts, depending on different facts, or principles, and susceptible of definite division and liquidation. This principle is fully sustain-

ed by many modern decisions; and where the relief cannot be had at law by way of defence to the action, it may be sought in some different form.

As this view of the case was not discussed, I refrain from further comments upon it, remarking only, that if the amount of principal and eight per cent interest, was the sum due on the bond, and it alone was the consideration of this defendant's three notes for the larger amount, the excess can be precisely ascertained, and the consideration severed with certainty, and perhaps the discount under a proper issue can be allowed in this action. At any rate, I am of opinion, that this issue does not present the true merits of the case; and that justice would be rendered more difficult to attain, by rendering judgement for the plaintiff upon it. Under a different issue, the evidence of the defendant would be inadmissible, but I think the other testimony sufficiently shews the consideration; and that the law of the case would be the same without it, or, if not, the defendant, by timely application, would be entitled to relief in Chancery. My opinion therefore is, that the judgement below must be reversed, and the cause be remanded for further proceedings. A majority concur in the *result*, on various grounds which they can best explain.

## By JUDGE CRENSHAW.

In this case I am of opinion, that the judgement should be reversed, and the proper judgement rendered by this Court. But a majority of the Court not being of this opinion, I am necessarily constrained to yield my assent that the case be remanded. In arriving at this conclusion, I am not to be understood as adopting all the reasoning and principles laid down by a majority of the Court, for in some of them I do not concur.

Reversed and remanded.

Judge Gayle not sitting.