(January 17, 1902.)

## ANDERSON v. CREAMERY PACKAGE MANUFACTURING COMPANY.

[67 Pac. 493.]

USURY—CORRUPT INTENT.—Where a note provides for interest at ten per cent per annum, both before and after judgment, and it does not appear that there was a corrupt intent on the part of the lender to receive an unlawful rate of interest, it is not an usurious contract.

CHATTEL MORTGAGE—MORTGAGE LIEN—FIXTURES.—Where machinery is purchased for use in a permanent building under a contract that the machinery shall remain the property of the seller, or where, after such machinery is placed in such building a chattel mortgage is given by the purchaser to the seller upon such machinery, a real estate mortgage of prior date to the purchaser of such machinery is not a lien upon such machinery, and the mortgagor has a right of action to foreclose his chattel mortgage.

(Syllabus by the court.)

APPEAL from District Court, Bear Lake County.

John A. Bagley, for Appellant.

The requisites to form a usurious transaction are four: 1. A loan either expressed or implied; 2. An understanding that the money lent shall be returned; 3. A corrupt agreement to pay a greater rate of interest than is allowed by law; 4. A corrupt attempt to take more than a legal rate of interest. (Especially see *Washington etc. Investment Assn. v. Stanley,* 38 Or. 319, 63 Pac. 489, 495; *Loyd v. Scott,* 4 Pet. 205; *Balfour v. Davis,* 14 Or. 47, 12 Pac. 89; Webb on Usury, 17, 30, 33-41; Tyler on Usury, 110; *United States Bank v. Waggner,* 9 Pet. 378, 799; *Fay v. Lovejoy,* 20 Wis. 407.) It appears there must have been an unlawful agreement to take usury, entered into with a corrupt intent at the time of loaning the money. (Webb on Usury, 30, 33-41; *Stevens v. Staples,* 64 Minn. 3, 65 N. W. 959; *Elliott v. Sugg,* 115 N. C. 236, 20 S. E. 450; *Gilmore v. Ferguson,* 28 Iowa, 220; *Chopins v. Mathol,* 91 Hun, 565; *Carolina Savings Bank v. Parrott,* 30 S. C. 61, 8 S. E. 199.) Articles annexed by a mortgagor of land, after making the mortgage, become subject thereto, and the same rules apply in determining what articles are a part of the realty in this case as when the annexation is previous to a mortgage or conveyance. (1 Jones on Mortgages, 436. See, also, *Allen v. Citizens' etc. Nav. Co.,* 6 Cal. 402; *Conant v. Conant,* 10 Cal. 258; *Willis v. Wozencraft,* 22 Cal. 620; *Fratt v. Whittier,* 58 Cal. 126, 41 Am. Rep. 251; *McKiernan v. Hesse,* 51 Cal. 594; *Merritt v. Judd,* 14 Cal. 59; 13 Am. & Eng. Ency. of Law, 670; *Hill v. Farmer,* 97 U. S. 450; *Wood v. Wheelan,* 93 Ill. 153; *Bond v. Coke,* 71 N. C. 97; *Bank v. Stevens,* 130 Mass. 547; *Winslow v. Merchants' Ins. Co.,* 4 Met. 306, 38 Am. Dec. 368, and note; *McFadden v. Allen,* 134 N. Y. 489, 32 N. E. 21.) We think all this machinery is clearly covered by the following clause in the mortgage: "Including all the machinery in the creamery." (13 Am. & Eng. Ency. of Law, 2d ed., 597-614. As to intention see: *Lavenson v. Soap Co.,* 80 Cal. 245, 22 Pac. 184, 13 Am. St. Rep. 147, and note; *Dutton v. Ensley,* 21 Ind. App. 46,

69 Am. St. Rep. 340, 51 N. E. 380; *Binkley v. Forkner,* 117 Ind. 176, 19 N. E. 753; *Improvement Co. v. Reddick,* 47 N. E. 848; *Winslow v. Ins. Co.,* 4 Met. (Mass.) 306, 38 Am. Dec. 368, and note. And cases cited in notes on pages 597, 598 and 599 of 13 Am. & Eng. Ency. of Law.) The annexation need not be such that removal of the article will injure the freehold. (13 Am. & Eng. Ency. of Law, 602, and cases cited; *Pierce v. George,* 108 Mass. 78, 11 Am. Rep. 310; *Allen v. Mooney,* 130 Mass. 155; *Doughty v. Owen* (N. J. Eq.), 19 Atl. 540.)

Alfred Budge, for Respondent.

The notes set out in appellant's complaint provide for the payment of ten per cent per annum interest "both before and after judgment." This clause makes each of said notes usurious. (See Idaho Rev. Stats., secs. 1263, 1264, and as amended in Session Laws 1889, pp. 315, 316; Webb on Usury, 35, 36.) Parol evidence cannot be received to contradict a written instrument, and there is no ambiguity about the notes, and nothing to explain, and we were not informed that any explanation would be offered until tendered at the trial. (18 Am. & Eng. Ency. of Law, 2d ed., 453; *Center Creek Water & Irr. Co. v. Lindsay,* 21 Utah, 192, 60 Pac. 559.) This proof was evidently offered to contradict the express terms of the note. (Greenleaf on Evidence, 15th ed., secs. 275, 277.) Did not become a part of the realty and that it was the intention of the parties that it should not, which intention largely controls and is a question of fact for the jury to find, and not a question of law for the court. (*Handy v. Dinkerhoff,* 57 Cal. 5, 40 Am. Rep. 107; *Seeger v. Pettit,* 77 Pa. St. 437-441, 18 Am. Rep. 452.) To convert a chattel into a real fixture the person making the annexation must, at the time the same is annexed, intend to make such chattel a permanent addition to the realty. (*Treadway v. Sharon,* 7 Nev. 37; *Tate v. Blackburn,* 48 Miss. 1; *Wheeler v. Bedell,* 40 Mich. 693; *Manwaring v. Jenison,* 61 Mich. 177, 27 N. W. 899.) The mortgagee, while he may be entitled to any annexation made by the mortgagor of his own property, would not be en-

titled either in law or in equity, to the property of others. That so long as he is secured in the full amount of property which he took for security for the payment of his debt, he has no ground for complaint. (*Manwaring v. Jenison,* 61 Mich. 117, 27 N. W. 899; *Binkley v. Forkner,* 117 Ind. 176, 3 L. R. A. 33; *Waterloo First Nat. Bank v. Elmore,* 52 Iowa, 541, 3 N. W. 547; *Tibbetts v. Mon,* 23 Cal. 209; *Miller v. Walson,* 71 Iowa, 610, 33 N. W. 128; *Henry v. Von Brandenstien,* 12 Daly, 480.) One who claims, under real estate mortgages, fixtures which were also covered by a chattel mortgage, has the burden of showing that the fixtures were attached to the realty at the time when the real estate mortgage was given. (*Buzzell v. Cummings,* 6 Vt. 213; *Campbell v. Roddy,* 12 Cent. Rep. 821, 44 N. J. Eq. 244, 6 Am. St. Rep. 889, 14 Atl. 279; *Ford v. Cobb,* 20 N. Y. 344; *Tift v. Horton,* 53 N. Y. 378, 13 Am. Rep. 537; *Kinsley v. Bailey,* 9 Hun, 452; *Session v. Hibbord,* 10 Hun, 420; *Andrews v. Chandler,* 27 Ill. App. 103; *Caper v. Peckham,* 35 Conn. 88; *Hill v. Wentworth,* 28 Vt. 428, 437.)

STOCKSLAGER, J.—This case comes here for review from three judgments rendered by the district court of Bear Lake county. On the twenty-first day of June, 1899, C. J. Anderson and Margaret Anderson, defendants, executed to plaintiff, John A. Anderson, a promissory note, to wit: "Four years after date, for value received, we, or either of us, promise to pay to John A. Anderson $3,100, negotiable and payable at the Manufacturers' National Bank of Racine, Wisconsin, in United States gold coin, with interest at the rate of ten per cent per annum from date until paid, both before and after judgment; and, if suit be instituted for the collection of this note, we agree to pay a reasonable attorney's fee. Interest payable yearly."

On the eleventh day of October, 1898, the same parties executed and delivered their promissory note payable to Mattie Vass, to wit: "Two years after date, for value received, we, or either of us, promise to pay to Mattie Vass, or order, $400, negotiable and payable at the Manufacturers' Bank of Racine, Wisconsin, in United States gold coin with interest at the

rate of ten per cent per annum from date until paid, both before and after judgment, and, if suit be instituted for the collection of this note, agree to pay a reasonable attorney's fee. Interest payable yearly." Mortgages were executed by C. J. Anderson and his wife, Margaret Anderson, to secure the payment of these notes upon the Anderson Creamery property in Bear Lake county, recorded, and delivered to John A. Anderson and Mattie Vass. The mortgages covered the creamery machinery fixtures and land. Mattie Vass assigned her note and mortgage to John A. Anderson before maturity, and on the twenty-eighth day of January, 1901, he brings suit to foreclose both mortgages.

On April 14, 1900, C. J. Anderson and Margaret Anderson executed and delivered their promissory note to the Creamery Package Manufacturing Company, a corporation, to wit: "For value received, we jointly and severally promise to pay to the order of Creamery Package Manufacturing Company, a corporation, the sum of $969, together with interest thereon at the rate of eight per cent per annum from date until paid, payable in installments as follows, to wit: Twenty-five dollars one month from date, twenty-five dollars two months from date, fifty dollars three months from date, and the sum of one hundred dollars on the fourteenth day of each and every month thereafter until the full amount of this note, together with the interest thereon, has been fully paid; and, if suit be instituted for the collection of this note, we, or either of us, promise to pay a reasonable attorney's fee."

On the same date a mortgage was executed and delivered by the Andersons to the Creamery Package Manufacturing Company to secure the payment of this note on the Anderson Creamery property in Bear Lake county, and at the same time a chattel mortgage was executed and delivered by the Andersons to the Creamery Package Manufacturing Company with property described, to wit: "One 36x8 15 H. P. boiler, complete, with all fittings, including 38, 16 stack and guy wire; one four hundred-gallon cheese vat; one four hundred-gallon milk rec. vat (gal.); one 400-gallon cream vat; one 60-gallon weigh can with three P.; one two-pound butter print, with 12 extra

trays; one 14¼ Helmer improved cheese press; twenty i4i, 2x6 gang press hoops and followers; two No. 1 Ideal rotary pumps; two No. 15 Gosher tanks; seven doz. ½ pint sample jars; one Canby sulph. acid; one Ideal test measure; one doz. 15 day milk sheets; two doz. jars; five gal. Housen's ch. color; ten gal. Renets; one large packet ferment; one De Haven C. B. bax hacks; one set 3x4 figures and letters; one revolving stencil; one Sturvil brush; one curd rake; one curd scrape; one 10x20 hard curd knife; one 10x20 peop curd knife; one 2s curd pail; one belt 14x½ bandaged; ten yards heavy press cloth; one bolt 4 oz. cheese cloth; ten yards heavy press cloth; 25 feet 4-ply rubber belt; 64 feet 2½ 2-ply rubber belt; 100 feet ⅜ cut lace; 10 feet 3x4 4-ply hd. rubber suction hose; 150 feet ¾ gal. pipe; 6 feet ¾ gal. els; 6¾ gal. tees; 6¾ globe valves; 6¾ to ½ gal. reducers."

On the fifth day of February, 1901, an action was commenced in the district court of Bear Lake county to foreclose these two mortgages. On the twenty-fifth day of February, 1901, Hon. J. C. Rich, the district judge, caused to be made and entered of record the following order: "It is agreed by and between counsel for all parties wherein John Minnig is plaintiff and C. J. Anderson, defendant, and John A. Anderson is plaintiff and C. J. Anderson et al. are defendants, and also where Creamery Package Manufacturing Company is plaintiff and C. J. Anderson and Margaret Anderson are defendants, that the same may be consolidated and tried together, each of the parties answering the complaint of the others; and the same is hereby ordered by the court." On the twenty-eighth day of February, 1901, the Creamery Package Manufacturing Company answered the complaint of John A. Anderson, and, after alleging its corporate existence under and by virtue of the laws of the state of Missouri, and alleging its right of recovery by virtue of its mortgages, pleads that the note set out in plaintiff's first cause of action "is usurious and void as to the said corporation, and provides for an illegal rate of interest"; that said note, by its terms, is not due, and will not be due before the twenty-first day of June, 1903; hence prematurely brought,

and cannot be maintained. Answering the second cause of action, usury is alleged. Then follows an allegation that the lien of plaintiff, if he have any, is "subordinate to and subject to the lien of the said corporation." J. A. Anderson answers the complaint of the Creamery Package Manufacturing Company, averring that the articles described in the chattel mortgage are affixed and appurtenant to the building and machinery known as the Anderson Creamery, and that all of said articles are covered by each of the mortgages described in his complaint, and that said mortgages are a lien and encumbrance on said fixtures and appurtenances, and that plaintiff's two mortgages are a prior lien and encumbrance upon said goods and chattels. In the decree it is shown that "findings of fact and conclusions of law were expressly waived by the respective parties in writing."

Folios 71-74 of the transcript disclose the court's decision as follows: "1. That Anderson note for $3,100 is not due, and action dismissed as to said cause of action. 2. That Anderson note for $400 and mortgage is prior to and has preference over Package Manufacturing Company note and mortgage, and that judgment be entered of foreclosure in accordance with terms of contract for amount found due, principal, with no interest or attorney's fees, by reason of usurious contract in note, and that usual judgment in favor of school fund be entered against defendant. The court finds there was no fraud or want of consideration. 3. That Package Manufacturing Company have judgment for foreclosure of real and personal mortgage for amount found due on contract, both principal and interest, with $100 attorney's fees and costs. The court also finds the mortgaged articles mentioned in chattel mortgage are not fixtures, and can be removed without injury to the building. 4. The judgment is that said mortgaged premises be sold according to law, and after payment of costs of sale, the foregoing judgments be paid in the order named." Then follow decrees conforming to the findings or order of the court as above set out. Appellant, in his brief, relies upon these alleged errors: 1. That the notes are valid, and the "before and after judg-

ment" clauses in the notes do not make them usurious. 2. If this is a usurious clause, it found its way into these two notes by mistake. There was no corrupt agreement between the parties, and no intention on the part of either party to pay or receive usury, and therefore the penalty of the statute should not be enforced in this case against the plaintiff. 3. The machinery purchased and placed in the creamery for permanent use therein became a fixture, and was covered by the $400 and $3,100 mortgages. In support of his contention that these notes were not usurious, counsel for appellant calls our attention to section 1264 of the Revised Statutes of Idaho, to wit: "Parties may agree in writing for the payment of any rate of interest on money due or to become due, on any contract not to exceed the sum of one and one-half per cent per month; any judgment rendered n such contract bears interest at the rate of ten per cent per annum until satisfied."

By the Session Laws of Idaho of 1899, at page 316, we find the following amendment: "Parties may agree in writing for the payment of any rate of interest on money due, or to become due, on any contract not to exceed the sum of twelve per cent per annum; any judgment rendered on said contract shall bear interest at the rate of seven per cent per annum until satisfied." Section 1263 of the Revised Statutes provides that "when there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of ten cents on the hundred by the year, on money due on the judgment of any competent court or tribunal." By the Session Laws of 1899 (page 316) we find this section amended so as to read: "When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of seven cents on the hundred by the year on money due on the judgment of any competent court or tribunal."

The first question presented for our consideration is whether the two notes sued on were usurious. By the record it is shown that C. J. Anderson contracted to borrow money of John A. Anderson and Mattie Vass, both residents of Wisconsin; that he was to secure them with mortgages on his creamery prop-

erty in Bear Lake county. He was also authorized by both parties to have the notes and mortgages prepared, signed, recorded, and forwarded to them in Wisconsin. The rate of interest agreed upon was ten per cent per annum. In pursuance of such agreement, C. J. Anderson went to the law office · of Alfred Budge, had the notes and mortgages prepared by Mr. Budge. They were recorded, and forwarded as directed. The money was furnished by John A. Anderson and Mattie Vass for C. J. Anderson, and they had nothing whatever to do with the execution of the notes and mortgages, and, so far as the record shows, never knew that the question of usury would or could arise. Neither does the record disclose that C. J. Anderson, either for himself or for John A. Anderson and Mattie Vass (if he was acting for them), intended to enter into a usurious contract in the execution and delivery of the notes and mortgages sued on; hence, if the notes appear to be usurious, it is not shown that there was any corrupt agreement between the parties to pay or receive a rate of interest not allowed by our statutes. In Washington etc. Investment Assn. v. Stanley, 38 Or. 319, 63 Pac. 495, it is said: "But notwithstanding the contract appears to be usurious on its face, and the natural inference to be drawn therefrom is that the parties intended the result of their own acts, yet there is another element which must attend the practice of usury. It must be with a corrupt intent, which means that the parties must have knowingly agreed upon a rate of interest greater than that allowed by law. But where they have acted under an honest belief that the stipulated rate was recoverable under the law, in which they were mistaken, it has been held that the penalties of usury would not be enforced." (*Thompson v. Jones,* 1 Stew. 556; 27 Am. & Eng. Ency. of Law, 925; *Balfour v. Davis,* 14 Or. 47, 12 Pac. 89; *Burwell v. Burgwyn,* 100 N. C. 389, 6 S. E. 409; Tyler on Usury, 110.) In *Fay v. Lovejoy,* 20 Wis. 407, it is said: "Usury is a matter of intention, and to avoid a contract on that ground it must appear that the lender knew the facts, and acted with a view of evading the law." (See *Otto v. Durege,* 14 Wis. 574, and cases cited; *Bank v. Waggener,* 9 Pet. 378, 9 L. ed. 163.) Under

the authorities above cited, can it be said that John A. Anderson and Mattie Vass knowingly and corruptly entered into contracts —the notes and mortgages—with the intent to collect a rate of interest that would be usury under our statute? We think not.

The next question presented by the record is the cause of action arising on the chattel mortgage given by C. J. Anderson and wife to the Creamery Package Manufacturing Company. It is shown that after the execution and delivery of the notes and mortgages on the creamery property of C. J. Anderson by said Anderson and wife to John A. Anderson and Mattie Vass, C. J. Anderson bought certain machinery of the Creamery Package Manufacturing Company, to be placed in said creamery building; that such machinery was placed in said building, and used by C. J. Anderson. C. J. Anderson and wife executed and delivered their note to the Creamery Package Manufacturing Company, and at the same time executed and delivered their chattel mortgage to said company covering said property. It is also shown that at the same time C. J. Anderson and wife executed and delivered to said company their real estate mortgage as additional security for the payment of the obligation sued on, said mortgage covering the creamery property of said C. J. Anderson. At the trial, evidence was offered on behalf of the Creamery Package Manufacturing Company for the purpose of showing that the sale of the property covered by the chattel mortgage was a conditional one—that the property was to remain the property of the Creamery Package Manufacturing Company until paid for—and this condition existed up to the time of the execution and delivery of the chattel mortgage. An objection was interposed to the admission of this evidence on the ground that it was immaterial, which was sustained by the court. It would seem from the offer and the objection that the property had been treated as personal in its character by the Creamery Package Manufacturing Company, as well as Mr. C. J. Anderson, who was the witness by whom it was sought to prove such contract of sale, and, we think, was a material issue in the case in determining the character of the property, whether personal or a part of the realty, and hence, whether

it had become a fixture. From these facts we conclude that the John A. Anderson mortgage and the Mattie Vass mortgage were prior liens upon the real estate of C. J. Anderson, and that the said mortgages did not cover the machinery placed in said building bought from the Creamery Package Manufacturing Company; that said Creamery Package Manufacturing Company is entitled to have its chattel mortgage foreclosed, as found by the trial court.

The only error we find in the record is the judgment of the trial court finding that the John A. Anderson note and the Mattie Vass note were usurious. The judgment of the trial court is reversed in this particular, and remanded for further proceedings in harmony with the views herein expressed.

Quarles, C. J., and Sullivan, J., concur.