TIPPETT & WOOD v. BARHAM.

(Circuit Court of Appeals, Fourth Circuit. July 12, 1910.)

No. 969.

1. CORPORATIONS (§ 478*)—MORTGAGES—AFTER-ACQUIRED PROPERTY CLAUSE.
    Under an after-acquired property clause in a corporation mortgage securing bonds, any property acquired by the mortgagor subsequent to the execution of the mortgage, and which is within the general description contained therein, will become as fully subject to the lien of the mortgage in equity as if such property had been owned by the mortgagor at the date of the execution of the mortgage, subject to such limitations as are imposed upon it when acquired by the mortgagor.
    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 478.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. CORPORATIONS (§ 478\*)—MORTGAGES—AFTER-ACQUIRED PROPERTY CLAUSE—. IMPROVEMENTS ON REAL ESTATE—RESERVATION OF LIEN BY CONTRACTOR.**

A water company issued bonds secured by a mortgage of all the property it then owned or should thereafter acquire. It subsequently acquired a tract of land and contracted with petitioners to construct a standpipe thereon as a necessary and permanent part of its waterworks system, and which was attached by bolts, to a concrete foundation constructed by the company. *Held*, that a provision of the contract by which petitioners reserved title to the standpipe, with the right to remove it if the contract price was not paid, was ineffective as; against the mortgage creditors.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 478.\*]

Appeal from the Circuit Court of the United States for the Eastern District of Virginia, at Norfolk.

Suit in equity by John A. Barham against the Peninsula Pure Water Company and causes consolidated therewith. Tippett and Wood, intervening petitioners, appeal from an order disallowing their claim to priority as creditors. Affirmed.

The question at issue upon this appeal arises between the holders of bonds of the Peninsula Pure Water Company issued under and secured by a mortgage to the Knickerbocker Trust Company and Tippett & Wood, the appellants.

By deed bearing date February 1, 1906, and recorded in the clerk's office of Elizabeth City county, Va., February 16, 1906, the Peninsula Pure Water Company conveyed to the Knickerbocker Trust Company of New York City all of its property, rights, and franchises to secure, an issue of $300,000 of first-mortgage bonds. This deed contains what is generally known as the "after-acquired property clause," the language being: "Does grant, bargain, sell, and convey \* \* \* all other property, real, personal or mixed, of whatsoever kind or description, and wheresoever situated now owned or possessed by it, or which may hereafter be acquired by it, the said Peninsula Pure Water Company; also, all corporate and other franchises, privileges, rights, benefits, immunities and exemptions \* \* \* either by legislative grant or contract, or otherwise." By deed bearing date March, 18, 1906, and recorded March 29, 1906, Thomas Harmond and wife conveyed to the Peninsula Pure Water Company a certain tract of land located in the town of Hampton, in the county of Elizabeth City. And by a contract bearing date March 9, 1906, but which was actually executed some time after that date, Tippett & Wood, the intervening petitioners, entered into an agreement with the Peninsula Pure Water Company and Whetstone & Company by which they agreed to erect for the use of the Peninsula Pure Water Company a certain standpipe for the price of $8,148, and according to plans and specifications referred to in said contract, said contract being under the corporate seal of all parties. This standpipe was subsequently erected on the tract of land purchased of Thomas Harmond et ux., and was completed according to plans and specifications, although the water company was placed in the hands of the receivers before there was a formal acceptance of the standpipe by it. The water company prepared a concrete foundation upon which the standpipe was constructed, and to which it was attached by bolts and taps. This contract which was never recorded contained the following clauses: "No right, or title to said standpipe, or to the material of which the same is composed, shall pass to Whetstone & Company or Peninsula Pure Water Company, or to any other persons or companies until all the payments above mentioned shall be fully made; and, if in any case all the payments are not made, Tippett & Wood may enter upon the property and remove the material or standpipe as furnished by them." "If said Whetstone & Company and Peninsula Pure Water Company shall keep and perform all the terms of this agreement and make no default in any of said payments as they become due, and in that case said Tippett & Wood will make, execute and deliver to Whetstone & Company or Peninsula Pure Water Company a good and sufficient bill of sale for said

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

standpipe." Said standpipe was built·and completed according to plans and specifications prior to receivership proceedings; but default was made in the payments provided for leaving a balance unpaid of $2,548, with interest from February 1, 1907, and $97.78, with interest from March 1, 1907 (this latter sum was for repairs and labor caused by the alleged delay of the water company to make proper tests after completion of the work), whereupon Tippett & Wood filed its petition setting up its contract and praying leave of court to enter upon the premises and remove the said standpipe according to the terms of its contract.

The decree for sale of the water companies' properties included the standpipe in question, the court reserving "to all persons claiming a lien or liens against any of the assets or property herein authorized to be sold the same liens, rights, or claim against the money derived from the said sale as such person or persons may have, or could set up and establish against the said assets or properties as if no sale had been had hereunder," Tippett & Wood consenting, without prejudice, that its claim be paid either in money or by removing the standpipe; the properties of the water companies including the standpipe in question claimed by Tippett & Wood were subsequently sold as a whole and the said sale duly confirmed.

The report of the special master filed on September 29, 1909, allowed the claim of Tippett & Wood as an unsecured debt, and disallowed the priority of the same over the first mortgage bonds. Tippett & Wood, by counsel, filed exceptions to said report of the special master, which exceptions were overruled by the court.

William C. L. Taliaferro, for appellant.

Henry W. Anderson and William H. White, Jr. (Munford, Hunton, Williams & Anderson, on the brief), for appellees.

Before GOFF, Circuit Judge, and KELLER, District Judge.

KELLER, District Judge (after stating the facts as above). In the argument it was admitted that if the standpipe which was the subject of the contract between appellants, Whetstone & Co. (the general subcontractors) and Peninsula Pure Water Company, became a fixture, so as to become annexed to the freehold, it would pass under the lien of the mortgage by virtue of the "after-acquired property" clause; but it was strenuously insisted that by the terms of the contract it is apparent that no such annexation was contemplated by the parties to that contract. We do not so understand this contract that the subject of it was never to become annexed to the freehold, but rather that there was an attempt to so preserve the status of the subject of the contract as that, in the event of necessity, it might be reclaimed as personal property the title whereto had not been parted with by the appellants. The standpipe was to be erected "for the use of the Peninsula Pure Water Company," and when erected in accordance with specifications attached to and made a part of the agreement was to be "accepted by Whetstone & Co. and Peninsula Pure Water Company."

The special master found: That the standpipe in question was erected upon a foundation which is supposed to be 25 feet in diameter and 10 feet in depth, and is attached to this foundation by anchor bolts 10 feet in length and 2 inches in diameter. These anchor bolts are imbedded in the foundation. The standpipe is 18 feet in diameter and 140 feet high above the top of the foundation. That the standpipe is a part of the original construction work of the system of

waterworks intended to be constructed, and an indispensable part of such system, as without such a standpipe it would have been impossible for the water company to have furnished its consumers with water. That it is one of the integral parts of the property which as a whole was to constitute the security of the mortgage creditors.

As between the parties to the contract doubtless the rights reserved to Tippett & Wood would be binding, but as the question here is between the appellants, on the one side, and the trustee under the mortgage and the bondholders, on the other, it is pertinent to inquire whether there is any reason or principle upon which the interests of these latter parties who were not parties to this contract can be affected by it. There is a line of cases which, with more or less unanimity, holds that where a mortgage exists on real estate, and an accession is subsequently made of property agreed between the vendor and the mortgagor to be treated as personalty and a reservation of title until paid for agreed upon between vendor and mortgagor-purchaser, such accession, if it can be severed from the realty without injury to the latter or to the value of the security for the mortgage debt as it stood before the improvement was made, will be impressed with the same character as between the vendor and the mortgagee as between the vendor and mortgagor; in other words, that it does not become real estate, and may be removed without invading the rights of the mortgagee. Of this class are Campbell v. Roddy, 44 N. J. Eq. 244, 14 Atl. 279, 6 Am. St. Rep. 889, Binkley v. Forkner, 117 Ind. 185, 19 N. E. 753, 3 L. R. A. 33, German Sav. & L. Soc. v. Weber, 16 Wash. 95, 47 Pac. 224, 38 L. R. A. 267, and Northwestern Mut. L. Ins. Co. v. George, 77 Minn. 319, 79 N. W. 1028, 1064, and these cases and some others support this doctrine more or less completely.

Upon the other hand, there are many cases (some of which will be hereinafter referred to) which hold that personal property incorporated into or affixed to real estate in such manner that it would be subject to the lien of an existing mortgage thereon as between the mortgagor and mortgagee will be so subject to the lien of the mortgage, notwithstanding the existence of an agreement between the vendor and the mortgagor that it shall retain its character as personal property, unless the mortgagee be also a party to such agreement. This is what is generally known as the Massachusetts rule, and it has been affirmed by many other courts of last resort, and particularly by the Supreme Court of the United States in several cases hereinafter separately referred to.

We think this latter doctrine announces the correct principle, especially where the application is, as in the present case, confined to a case wherein the mortgage (containing an after-acquired property clause) has been drawn for the purpose of embracing the entire working plant of the corporation, including its franchises, as in such cases it is usually true that the mortgage is given at a time when the real estate is but very insufficient security for the debt, and the subsequent accessions are very generally made by the expenditure of the funds derived by reason of the negotiation of the bonds secured by such a mortgage, and the mortgage is made and received in contemplation of

such accessions. In such cases the equities of the beneficiaries under the mortgage should and must attach to such accessions as, under the description contained in the mortgage, are included within it, unless some higher equity or a legal title intervenes. In this case the mortgage to the Knickerbocker Trust Company was executed February 1, 1906, and recorded February 16, 1906. The deed from Thomas Harmond and wife to the Peninsula Pure Water Company for the land upon which the standpipe was erected was executed on March 8, 1906, and recorded on March 29, 1906. The contract between appellants Whetstone & Co. and the Peninsula Pure Water Company was dated March 9, 1906, but was not really executed until some time after its date, and was not recorded.

Under an after-acquired property clause such as that contained in the mortgage executed to secure the bondholders in the case at bar, any property acquired by the mortgagor subsequent to the date of execution and delivery of the mortgage, and which is within the general description contained therein, will become as fully subject to the lien of the mortgage in equity as if such property had been owned by the mortgagor at the date of the execution and delivery of the mortgage. Pennock v. Coe, 23 How. 117, 16 L. Ed. 436; Galveston, etc., R. R. Co. v. Cowdrey, 11 Wall. 459, 20 L. Ed. 199; Branch v. Jesup, 106 U. S. 478, 1 Sup. Ct. 495, 27 L. Ed. 279; Thompson v. White Water, etc., R. R. Co., 132 U. S. 68, 10 Sup. Ct. 29, 33 L. Ed. 256. As a matter of course, such subsequently acquired real estate comes under the lien of the mortgage subject to such limitations as are imposed upon it when acquired by the mortgagor—in other words, only such interest passes as passed to the mortgagor—and hence, had the property conveyed by Thomas Harmond and wife to the Peninsula Pure Water Company been subject to a lien (for purchase money or otherwise) on March 8, 1906, when it was acquired, such lien would have been preserved as against any claims of bondholders or trustee. Of this nature were the facts in the cases of Wood v. Holly Mfg. Co., 100 Ala. 326, 13 South. 948, 46 Am. St. Rep. 65, and Holly Mfg. Co. v. New Chester Water Co. (C. C.) 48 Fed. 879, cited by appellants. So also if personal property, which is not and never becomes a part of the freehold mortgaged, is acquired by the mortgagor after the execution and delivery of the mortgage, the interest of the mortgagor may pass under the after-acquired property clause of the mortgage if the general description in that clause will cover it, but it must pass burdened by whatever restrictions were imposed upon it in respect to the mortgagor, because only such title can pass to the trustee as was vested in the mortgagor through whom it passed. This was the situation in New Orleans, etc., Ry. Co. v. U. S., 79 U. S. 362, 20 L. Ed. 434, Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, and Meyer v. Car Co., 102 U. S. 1, 26 L. Ed. 59, cited by the appellants, and the situation is readily distinguishable from that existing in the case at bar. In the case at bar the structure in issue, having become affixed to a part of the freehold which, at the time it was so affixed, was subject to the lien of the mortgage in equity, thereby became (except as to parties to the contract) a part of the real estate, and, by operation of law, became subject to the mortgage without regard to any agreement be-

tween the mortgagor and the person furnishing or erecting such property or structure.

In New Orleans, etc., R. R. Co. v. U. S., 79 U. S. 363, 20 L. Ed. 434, 436, cited by appellants, the court draws a clear distinction between the character of the personal property in that case (rolling stock) which never became affixed to the freehold, and property of the character of that in the case at bar, and held that, if the property had been rails or other material which became affixed to and a part of the principal thing mortgaged, the existing mortgage on the real estate would have had priority of lien over any lien reserved for purchase money.

In Porter v. Pittsburg Steel Co., 122 U. S. 267, 7 Sup. Ct. 1206, 30 L. Ed. 1211, where the contract between the bridge company and the railway company provided that the bridges erected by it should remain the property of the bridge company until they had been fully paid for and that, in default of payment, the bridge company should have the right to remove the bridges and bridge material, the Supreme Court of the United States said:

"The bridges became a part of the permanent structure of the railroad, as much so as the rails laid upon the bridges or upon the railroad outside of the bridges. Whatever is the rule applicable to locomotives and cars, and loose property susceptible of separate ownership and of separate liens, and to real estate not used for railroad purposes, as to their being unaffected by a prior mortgage given by a railroad company, covering after-acquired property, it is well settled in the decisions of this court that rails and other articles which become affixed to and a part of a railroad covered by a prior mortgage will be held by the lien of such mortgage in favor of bona fide creditors as against any contract between the furnisher of the property and the railroad company, containing stipulations like those in the contracts in the present case. Dunham v. Railway Co., 1 Wall. 254 [17 L. Ed. 584]; Galveston Railroad v. Cowdrey, 11 Wall. 459, 480, 482 [20 L. Ed. 199]; United States v. New Orleans Railroad, 12 Wall. 362, 365 [20 L. Ed. 434]; Dillon v. Barnard, 21 Wall. 430, 440 [22 L. Ed. 673]; Fosdick v. Schall, 99 U. S. 235, 251 [25 L. Ed. 339]."

To the same effect see Clary v. Owen, 15 Gray (Mass.) 522; Hunt v. Bay State Iron Co. et al., 97 Mass. 283; Thompson v. Vinton, 121 Mass. 139; Hopewell Mills v. Taunton Savings Bank, 150 Mass. 519, 23 N. E. 327, 6 L. R. A. 249, 15 Am. St. Rep. 235; Ekstrom v. Hall, 90 Me. 186, 38 Atl. 106; McFadden v. Allen, 134 N. Y. 489, 32 N. E. 21, 19 L. R. A. 446; Bass Foundry v. Gallentine and others, 99 Ind. 525; Cunningham v. Cureton, 96 Ga. 489, 23 S. E. 420; Fuller-Warren Co. v. Harter, 110 Wis. 80, 85 N. W. 698, 53 L. R. A. 603, 84 Am. St. Rep. 867; Demby v. Parse, 53 Ark. 526, 14 S. W. 899, 12 L. R. A. 87; Anderson v. Creamery Package Mfg. Co., 8 Idaho, 200, 67 Pac. 493, 56 L. R. A. 554, 101 Am. St. Rep. 188; Watertown, etc., Co. v. Davis, 5 Houst. (Del.) 192. In Clary v. Owen, supra, what we have called the Massachusetts doctrine is thus tersely expressed:

"We think it is not in the power of the mortgagor by any agreement made with a third person after the execution of the mortgage to give to such person the right to hold anything to be attached to the freehold, which, as between the mortgagor and mortgagee, would become a part of the realty."

In Hunt v. Bay State Iron Company and Others, supra, the court expressed the same view, saying:

180 F.—6

"Nor do we suppose that the mortgagor in possession is competent to bind existing mortgagees by any agreement to treat as personalty annexations to the freehold. The legal character of the rails when once laid down is determined by the law to be that of real estate. Mortgagees as well as all other parties in interest are entitled to this rule of law which can be taken from them only by their own waiver."

In Meagher v. Hayes, 152 Mass. 228, 25 N. E. 105, 23 Am. St. Rep. 819, the same court held that a building put on mortgaged land and annexed to it in the usual way, notwithstanding an agreement between the owner of the building and the mortgagor that it should remain personal property with the right of the owner to remove it, became a part of the mortgage security, the mortgagee not being a party to such agreement, and that the purchaser of the land at foreclosure sale became the owner of such building, though he bought with notice of such agreement.

We think the rule as enunciated by all these cases is applicable to the case at bar, and that there was no error in the decree entered by the Circuit Court on the 27th day of January, 1910, overruling the exceptions of the appellants to the report of the special master filed on the 29th day of September, 1909, and the same is accordingly affirmed, with costs.